NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Bankruptcy Case No. 10-35898 |
| EUGENE M. LAVERGNE, | Chapter 13 |
| Debtor | |
| TARA LAVERGNE, GARY E. FOX, AND FOX & MELOFCHIK, | |
| Plaintiffs, | |
| vs. | Adversary No. 10-2557 |
| EUGENE M. LAVERGNE | **MEMORANDUM OPINION** |
| Defendant. | Defendant's Motion for Summary Judgment - Document Number 10 |
| | Hearing Date: April 27, 2011 |

**APPEARANCES**

Attorneys for Plaintiff
Gary E. Fox, Esquire
Law Offices of Gary E. Fox, L.L.C.
1001 Deal Road
Ocean, New Jersey 07712

Attorney for Defendant
Eugene M. LaVergne, Pro Se
84 Broad Street
Eatontown, New Jersey 07724

On April 27, 2011, the Court took oral argument on a motion by defendant, Eugene M. LaVergne, for summary judgment. Defendant seeks summary judgment against the Plaintiffs on their complaint and partial summary judgment on the First Count of his Counterclaim. The following represents the Court's findings of fact and conclusions of law.

### Background

Eugene LaVergne filed a Chapter 13 bankruptcy petition on August 23, 2010. Schedule F lists disputed debts to Tara LaVergne in the amount of $85,000 and to Gary Fox, Esq. in the amount of $60,000. All of the unsecured debts listed in Schedule F contain the notation "on appeal". The Defendant's Chapter 13 plan does not provide for payment of the debts to Ms. LaVergne and Mr. Fox as priority debts. The confirmation hearing is currently scheduled for May 25, 2011.

On December 6, 2010, Tara LaVergne, Gary E. Fox, Esq., and Fox & Melofchik, L.L.C. (collectively "Plaintiffs") filed a complaint titled "Complaint for Non-Discharge Order". The Defendant filed an Answer, Affirmative Defenses and Counter-claim. On April 4, the Defendant filed this motion for summary judgment.

### Discussion

Summary judgment is not lightly granted. The Federal Rules provide that summary judgment should be granted only when the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. Pro.* 56©. The party moving for summary judgment has the burden of establishing the nonexistence of any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Third Circuit has stated that whenever there is even the "slightest doubt regarding the facts of a case,

2

summary judgment should not be granted." Tomalewski v. State Farm Life Ins, Co., 494 F.2d 882, 884 (3d Cir. 1984). Facts must be viewed in the light most favorable to the party against whom summary judgment is sought. Tran v. Metropolitan Life Ins. Co., 408 F.3d 130, 135 (3d Cir. 2005).

The first part of the motion seeks summary judgment on the Plaintiffs' complaint. The Complaint does not contain any counts, but in the body of the complaint states:

> This is an action pursuant to 11 U.S.C. § 523(a5) [sic] and (a15) [sic] objecting to the discharge of debts owed by Defendant/Debtor to Plaintiffs in the amount of $146,386.65 plus interest and cost of suit. Plaintiffs contend that these debts are non-dischargeable as they are "for a domestic support obligation" and that they are owed to a former spouse and child and that these obligations were incurred by the Debtor in the course of a divorce decree or other order of a court of record made in accordance with the law of the State of New Jersey. As such, these debts are non-dischargeable pursuant to 11 U.S.C. § 523(a5) [sic] and (a15) [sic]

*Complaint* ¶ ¶ 7, 8. Although the Complaint does not plead them as separate causes of action, the Court will consider the causes of action under § 523(a)(5) and (a)(15) separately because they are mutually exclusive and must be plead in the alternative.

## A.  11 U.S.C. § 523(a)(5)

Section 523(a)(5) was amended as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The section now provides that a bankruptcy discharge does not discharge a debtor from any debt "for a domestic support obligation". 11 U.S.C. § 523(a)(5). A definition of the term "domestic support obligation" ("DSO") was added as part of BAPCPA and encompasses:

> a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--
> (A) owed to or recoverable by--

3

> (I) a spouse, former spouse, or child of the debtor or such child's
> parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;
> 
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> 
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
> 
> > (I) a separation agreement, divorce decree, or property settlement agreement;
> > (ii) an order of a court of record; or
> > (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> 
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A). Thus, for an obligation to a former spouse to be considered a DSO, it must actually be in the nature of support. In re Smith, 586 F.3d 69, 73 (1st Cir. 2009). Whether something is actually in the nature of support is a question of federal bankruptcy law, and not state law. In re Werthen, 329 F.3d 269, 272-73 (1st Cir. 2003). Courts have held that the "label applied to the obligation by the [state] court or the parties is not necessarily controlling for Bankruptcy Code purposes." Smith at 74; Prensky v. Clair Greifer, L.L.P., 2010 WL 2674039 (D.N.J. June 30, 2010) (noting that the Code's definition of DSO in § 101(14A) provides that it is determined "without regard to whether such debt is expressly so designated"). The Plaintiffs, as the parties seeking to have a debt determined to be a DSO and thus nondischargeable, bear the burden of proving that the obligation is in the nature of support. In re Werthen, 329 F.3d at 271-72.

This motion was brought as one for summary judgment, but neither side focuses on the standards for such a motion; rather, both sides simply argue the merits of their position. This

Court has rarely, if ever, seen a complaint that was less amenable to resolution by summary judgment. Virtually every material factual allegation regarding whether a domestic support obligation was created is disputed. In support of his motion, the Defendant filed "Defendant's Statement of Uncontested Material Facts". That submission improperly contains argument and personal opinion[1]. But even if the submission were proper, the majority of the "uncontested" facts it contains were denied in "Plaintiffs' Reply to Defendant's Statement of Uncontested Material Facts".

One of the basic requirements for finding a debt to be a DSO is that it was established by: 1) a separation agreement, divorce decree, or property settlement agreement; 2) an order of a court of record; or 3) a determination made in accordance with applicable nonbankruptcy law by a governmental unit. Even that basic proposition is thoroughly disputed by the parties. The Plaintiffs allege that Tara LaVergne is the former wife of the Debtor. *Complaint* at ¶ 1. The Defendant denies that she is "the former wife of the Debtor" because:

> [t]he underlying legal validity of the December 5, 2007 Final Judgment of Divorce in Default ... the December 5, 2007 Amended Final Judgment of Divorce in Default ... and December 17, 2007 Second Amended Final Judgment of Divorce in Default ... all remain in question and in active legal dispute.

*Defendant's Answer* at ¶ 1. As a result, the Bankruptcy Court is unable to determine even the threshold issue of whether the debt at issue arose "by reason of" a divorce decree or a court order. Accordingly, the Court cannot grant summary judgment pursuant to § 523(a)(5).

---

[1] For example, ¶ 19 of the statement of undisputed facts states that Judge Flynn's October 23, 2009 order was "outrageous" and "clearly wrong".

**B. 11 U.S.C. § 523(a)(15)**

Section 523(a)(15) was also amended as part of BAPCPA. It currently provides that a bankruptcy discharge does not apply to a debt:

> to a spouse, former spouse, or child of the debtor **and not of the kind described in paragraph (5)** that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit

11 U.S.C. § 523(a)(15) (emphasis added). The BAPCPA amendment eliminated the balancing test regarding a debtor's ability to pay. This section is broader than § 523(a)(5), and is intended to cover any matrimonial debts that "should not justifiably be discharged". Matter of Crosswhite, 148 F.3d 879 (7th Cir. 1998) (quoting King, Collier on Bankruptcy ¶ 523.21). It is intended to reflect Congress's strong policy in favor of protecting ex-spouses and children. Macy v. Macy, 114 F.3d 1 (1st Cir. 1997).

Section (a)(5) requires that the debt arise "by reason of" a divorce decree or court order, while (a)(15) only requires the debt to be "in connection with" such an order. Nonetheless, because this motion was brought as one for summary judgment the Court has the same problem as noted above with finding that there are no disputed material facts. Accordingly, the Court must also deny summary judgment pursuant to § 523(a)(15).

**C. Counterclaim**

The First Count of the Counterclaim is titled "Declaratory Judgment" and states that "[i]n the present case debtor seeks a declaration from this Court in accordance with 28 U.S.C. sec. 2201 as outlined below in the the [sic] Request for Relief." *Counterclaim* at ¶ 23. After the Sixth Count, there is a section D titled "Request for Relief" that lists paragraphs A through I

6

which seek various declarations under 28 U.S.C. § 2201. In essence, the declarations seek a finding that the orders entered by Judge Flynn are invalid and unenforceable, and that the parties obligations should be governed by the 2008 Consent Agreement and Consent Order.

Although not addressed by the parties, the threshold determination that this Court must make before it can make any ruling pursuant to the Federal Declaratory Judgment Act is whether there is a justiciable issue. The Supreme Court has explained that the phrase "case of actual controversy" in the Federal Declaratory Judgment Act refers to the types of cases and controversies that are justiciable under Article III of the Constitution. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007). Even if the Court were to find Article III standing, the Declaratory Judgment Act provides that a court "**may** declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a) (emphasis added), not that it must do so. Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952) (the Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."). The word "may" in the Act has long been understood "to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995).

In Wilton, the Supreme Court found that the District Court had acted appropriately when it declined to rule on an action brought pursuant to the Declaratory Judgment Act because there were parallel proceeding underway in the state court that presented an opportunity to litigate the same state law issues. The same is true here. The Debtor has filed an appeal that challenges the validity of the divorce orders that were entered in the state court. The First Court of the

Counterclaim does not raise any issues under federal law[2] and there are no issues regarding whether all necessary parties have been joined in the state court action. The Supreme Court has suggested that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in "[g]ratuitous interference" if it permitted the federal declaratory action to proceed. Wilton, 515 U.S. at 283 (quoting Brillhart v. Excess Ins. Co. of America, 316 U.S. 491 (1942)).

In this case, the state court appeal involves the same parties and presents an opportunity to ventilate the same legal issues, none of which is based on federal law. Although the Defendant clearly would prefer to have this matter heard in federal court because he does not think he is being treated fairly in the state court system, that issue itself is something that is more appropriately heard by the appellate courts in New Jersey in the first instance. Therefore, this Court is exercising its discretion not to consider the First Count of the Counterclaim, and it will be dismissed.

An alternative basis for dismissing the First Count of the Counterclaim is the Rooker-Feldman doctrine. That doctrine provides that lower federal courts should not act as appellate courts for state court decisions. Lance v. Dennis, 546 U.S. 459 (2006). For the doctrine to apply, four requirements must be met: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to

---

[2] With the exception of paragraphs H and I, which seek a declaration under 11 U.S.C. § 523(a)(5) and (a)(15), but this Court has already stated that a judgment on those counts is premature. Defendant argues generally in his brief that the state court judgments were obtained in violation of his federal constitutional rights, but the First Count of the Counterclaim does not plead any cause of action based on the United States Constitution.

review and reject the state judgments." Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010). The Defendant contends that his Counterclaim:

> will not run afoul of "Rooker-Feldman" because the Bankruptcy Court will not be reversing or overruling the invalid State Court Default Judgments. Rather, the Bankruptcy Court will simply be exercising congressionally conferred jurisdiction and **prohibiting the enforcement** of the constitutionally defective Orders at issue with a permanent Federal Injunction, which is what Bankruptcy Court's [sic] do to State Court judgments (even Default Judgments) all the time.

*Defendant's Brief* at 16-17 (emphasis in the original). In a nutshell, the Defendant contends that this Court can and should undo what happened in the state court because it was "in flagrant violation of debtor's Fourteenth Amendment Due Process Rights". *Defendant's Brief* at 17. The Third Circuit addressed a similar issue in Middlebrook at Monmouth v. Liban, 2011 WL 1035722 (3d Cir. March 23, 2011). In Middlebrook, an aggrieved tenant contended that the Rooker–Feldman doctrine did not bar his suit because his due process claims had not been decided by the state court. The tenant argued that errors by the state court trial judge violated his due process rights and that the judge's errors were substantial enough to merit a different outcome in the eviction case. The Third Circuit rejected that argument, finding that the due process claims were not independent causes of action, but merely additional arguments for why the state court judgment should be overturned. Id. at *2, n. 2. The same analysis applies here. The Defendant's due process arguments are merely a different way of phrasing the Defendant's belief that the state court judge acted improperly when he entered a judgment by default. The distinction the Defendant attempts to draw between overruling a state court judgment and prohibiting enforcement of the judgment is a distinction without a difference.

This Court is mindful that the Supreme Court has recently cautioned federal courts not to apply the Rooker-Feldman doctrine too expansively. Exxon Mobil Corp. v. Saudi Basic

Industries Corp., 544 U.S. 280 (2005). As noted above, after Exxon Mobil the Third Circuit applies a four factor test to determine the applicability of the Rooker-Feldman doctrine. Great Western, 615 F.3d at 166. The first factor is whether the federal plaintiff lost in state court. Although the titles of "winner" and "loser" are not a good fit in the matrimonial context, it is clear that the Defendant/Counterclaim Plaintiff regards himself as the loser in the matrimonial proceeding.

The next factor is whether the plaintiff complains of injuries caused by the state court judgment. The Great Western court noted that although that requirement seems straightforward, it can be complicated in its application. Id. at 167. The court noted that a "useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been "caused by" those proceedings." Id. In this case, the injury complained of did not and could not have existed prior to the state court proceeding, which strongly suggests that the state court judgement itself is the source of injury. The Court finds that the present facts are closely analogous to the example the Great Western court provided of a state court judgment based injury:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.

Id. at 167. In the case *sub justice*, the Defendant complains that the entry of the various divorce judgments and their concomitant financial obligations violated his federal due process rights. It is impossible for this Court to evaluate that claim without examining the underlying validity of the state judgments.

10

The third requirement is whether the judgment was entered before the federal suit was filed. That requirement is also satisfied here. The orders at issue were entered well prior to the filing of this adversary proceeding.

The final requirement is whether the plaintiff is inviting the federal court to review and reject the state court judgment. The second and fourth requirements are closely related. As previously stated, this Court does not know how it could decline to enforce the state court judgment without finding that it was invalid. More immediately, the fact that the Defendant/Counterclaim Plaintiff is inviting this Court to reject the state court judgment could not be more clear from the Counterclaim. For example, in the request for relief the Defendant/Counterclaim Plaintiff requests a declaration under 28 U.S.C. § 2201 that the judgments of divorce "are VOID as a matter of law" and "that any of the unilateral Court Orders entered by Judge Flynn that purport to change the agreement of the parties are hereby invalid and unenforceable as being in violation of both debtors constitutional and contract rights." *Defendant's Counterclaim* at 22 , 23-24.

All of the requirements for the application of the Rooker-Feldman doctrine are present here. The Court cannot find that the First Count of the Counterclaim presents an independent, non-barred claim; therefore, the Rooker-Feldman doctrine provides an additional rationale[3] for dismissing the First Count of the Counterclaim.

## Conclusion

The Defendant's motion for summary judgment on the two causes of action in the

---

[3] Given the Court's ruling it need not consider the additional arguments for abstention pursuant to 28 U.S.C. § 1334 or what the Plaintiffs dub "the domestic relations abstention doctrine".

Complaint is denied.  The Court will dismiss the First Count of the Counterclaim.  The Court will enter a form of order in accordance with this opinion.

                                                                  */s/ Kathryn C. Ferguson*
                                                                  KATHRYN C. FERGUSON
                                                                  US Bankruptcy Judge

Dated: May 17, 2011